(No. 25120.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* M. JAMES RIEDEL *et al.* Plaintiffs in Error.

*Opinion filed June 19, 1939.*

George W. Sprenger, for plaintiffs in error.

John E. Cassidy, Attorney General, John E. Dougherty, State's Attorney, and A. B. Dennis, (Charles T. McElwee, Jr., and Clarence D. Murphy, of counsel,) for the People.

Mr. Justice Gunn delivered the opinion of the court:

M. James Riedel and Roy L. Tweddale were convicted and sentenced in the circuit court of Peoria county for obtaining money by the confidence game, from which judgment they prosecute this writ of error.

In the fall of 1936 Tweddale and Riedel were promoting and selling stock in the Corn Belt Distilling Company, claimed to be a Delaware corporation. The complaining witness, Frank A. Smith, was a salesman in a local store. Tweddale, who was selling stock in the company, asked Smith to buy stock but Smith wanted to be assured of a job. At that time the office was at Belvidere, Illinois, and Smith made two trips to Belvidere, in company with others, to look the plant over, and was promised by Tweddale that he would be given a job in the office at Belvidere. In January, 1937, Smith purchased some stock in the corporation, for which he paid $500, and later bought some additional stock for which he paid $100. He went to work for the company on October 1, 1937, and was paid various sums of money commencing with $25 a week in October and gradually getting less money until the amounts became so small that he quit. Smith's conversations were all with Tweddale whom he says represented to him they would be ready to go in two weeks. Smith bought stock after he had examined the premises and the second purchase of stock took place two weeks after the first. Smith was paid in the way of salary about $200.

The Corn Belt Distilling Company had an office in the city of Peoria. The only conversation had with Riedel was a demand for the certificate of stock for the second sale, which he says Riedel refused. The People offered in evidence a certificate showing the dissolution of the Corn Belt Distilling Company, an *Illinois corporation,* and also certificates that the Corn Belt Distilling Company was not licensed in Illinois to transact business as a foreign corporation, nor had it qualified under the Illinois Securities law for the sale of securities within the State.

There was no evidence offered that there was no Delaware corporation of that name in existence, or that the stock purchased by Smith was fictitious.

The People also offered testimony of other witnesses who had purchased stock and the subscription contracts, all of which appeared to be in a Delaware corporation. These subscriptions were accompanied by a note signed by Tweddale and Riedel and an agreement under which, if the stock were retained, the note would be delivered back and if the stock were not retained, the note would be paid. This testimony was objected to.

Plaintiffs in error make two principal claims: First, that the element of trust and confidence, the gist of the crime of obtaining money by use of the confidence game, is absent; and second, that the court erred in refusing to sustain the challenge to the array of jurors selected to try the case.

It clearly appears from the evidence that plaintiffs in error were trying to promote a distilling company organized under the laws of Delaware; that they got in touch with the complaining witness; that he was willing to invest some money but wanted a job with the corporation; that before he invested the money he went to Belvidere and looked over the place where the distillery was to be located; that after he had looked it over he bought one lot of stock and about two weeks later bought another lot of stock; that he

started to work for the corporation and was paid an aggregate of approximately $200, starting with $25 per week and when, for reasons not disclosed by the record, the payments declined to $2 or $3 per "pay" Smith quit and demanded his money back. Practically all of the transactions testified to by Smith were had with Tweddale. The demand for the return of his money was made upon Riedel. The other transactions shown by the People have no relevancy to this transaction other than to show that plaintiffs in error were engaged in the sale of stock of an unlicensed foreign corporation that had received no certificate of qualification under the Illinois Securities law. The sale of securities for an unqualified corporation is a crime punishable by fine or imprisonment. (Ill. Rev. Stat. 1937, chap. 121½, par. 125.) The doing of business by a foreign corporation without a license incurs certain penalties. (Ill. Rev. Stat. 1937, chap. 32, par. 157.125.) The proof of the violation of the law with respect to sale of securities or failure to obtain a license is not sufficient to constitute the crime of obtaining the money by means and by use of the confidence game. (*People* v. *Gallowich*, 283 Ill. 360.) A conviction for confidence game cannot be sustained for obtaining money from a fraudulent land sale where the complaining witness made an independent investigation before buying. (*People* v. *Koelling*, 284 Ill. 118.) In *People* v. *Snyder*, 327 Ill. 402, a conviction on a confidence game charge was reversed where the proof showed a fictitious note was sold and the same was bought upon the strength of the security and not by reason of confidence in the seller.

The gist of the crime of obtaining money by means of the confidence game is the confidence reposed in the seller and the abuse of that confidence to obtain money. *People* v. *Sullivan*, 349 Ill. 509, *People* v. *Parker*, 356 id. 138, *People* v. *Peers*, 307 id. 539.

The evidence in this case shows that the complaining witness refused to buy stock unless he were promised a job, and did not buy any stock until he had made an investiga-

tion of the place of business of the corporation. He was given a job at a salary of $25 a week to start and it does not appear from the evidence that he was discharged; rather it appears that the corporation ran out of money. Smith says that the corporation had an office in the city of Peoria; that he called at the office but there is no statement from him as to whether the corporation had assets, or if the stock had value or whether or not he had a loss. Under the evidence the real complaint is that he was promised a job and the job "played out." He wants his money back for the stock purchased but does not say the stock does not represent value, although presumably he knows something about this matter as he worked out of the office of the Corn Belt Distilling Company for several months. It may be that the plaintiffs in error are guilty of violating some other criminal provisions of the statute but under the record in this case there is not sufficient proof to establish the crime of obtaining money by means and by use of the confidence game.

In view of the foregoing it becomes unnecessary to discuss the question raised with respect to the legality of the array of jurors by which plaintiffs in error were tried and convicted.

The judgment of the circuit court of Peoria county is reversed.

*Judgment reversed.*